UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CEDRIC REID,

                                  Plaintiff,

v.

GLENN GOORD, et al.,

                                  Defendants.

_____

**DECISION AND ORDER**

04-CV-00883(M)

        In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction by a United States Magistrate Judge [43].[1] Before me is defendants' motion for summary judgment [113]. Oral argument was held before me on March 25, 2010. For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

**BACKGROUND**

        Plaintiff is an inmate incarcerated with the New York State Department of Corrections ("DOCS"). He commenced this action *pro se* in 2004 alleging, *inter alia*, that defendants have acted with deliberate indifference to his health needs in violation of his Eighth Amendment Rights by exposing him to second hand smoke, also known as environmental tobacco smoke ("ETS"). Plaintiff has preexisting diagnoses of chronic obstructive pulmonary disease ("COPD") and asthma. Defendants' statement of undisputed facts [114], ¶3.

        Effective January 1, 2001, smoking was prohibited within DOCS facilities. Dwyer declaration [131], Ex. J. Shortly before the ban became effective, plaintiff entered DOCS

_____
[1]     Bracketed references are to the CM/ECF docket entries.

custody on December 18, 2000, and was initially housed at the Downstate Correctional Facility. Amended complaint [18], ¶1.

On or about January 24, 2001, plaintiff was transferred to the Attica Correctional Facility. Id., ¶1(e)(2). Shortly after his arrival, he complained that he was being subjected to second hand smoke, which impacted his respiratory condition. Id., ¶2; Dwyer declaration [131], Ex. K. According to plaintiff, he was taken to emergency sick call a few times after becoming overwhelmed by smoke while at Attica. Dwyer declaration [131], Ex. G, p. 51.

Defendant James Conway, Attica's First Deputy Superintendent, responded to plaintiff's complaint on February 7, 2001: "You have a choice of whether or not to smoke tobacco products. You do not have a choice of what facility you are housed in, what cell you lock in or what program you participate in. This facility is in compliance with the Department's 'Smoke Free Initiative'. There will be abusers, both staff and inmates. They will be dealt with in accordance with established procedures." Dwyer declaration [131-3], Ex. L. On February 15, 2001, R.K James, the Deputy Superintendent of Security, requested defendant M.L. Bradt to handle plaintiff's complaints. Dwyer declaration [131], Ex. N. In turn, Bradt advised Seargant Stachewicz that "the issue is smoking . . . there should be none! Your call if you want to move him -just don't open up any doors that we can't close." Id.

Likewise, Conway requested Barbara Frisby, the Nurse Administrator at Attica, to comment on plaintiff's complaints. Defendants' statement of undisputed facts [114], ¶8. In a February 14, 2001 memorandum to Conway, Frisby stated: "A review of [plaintiff's] medical file shows that he does have a serious respiratory condition and should be away from second hand smoke. A cell with a solid door and a private window would most likely be best for him."

Frisby declaration [113-10], Ex. B. Despite this recommendation, plaintiff was not relocated to a different cell. Amended complaint [18], ¶2(c). Therefore, he filed a grievance complaint on September 28, 2001. Dwyer declaration [131], Ex. O.

Plaintiff was seen by Robert Takos, MD on October 23, 2001, who recommended that he not work as a porter due to exposure to dust and chemicals and that he be moved to the medical restriction company. Frisby declaration [113-10], ¶10, Ex. D. On October 29, 2001, plaintiff's grievance was accepted by defendant Conway: "You have met with the doctor on 10/23 to discuss your situation. In light of the fact that you have several respiratory ailments and are affected by various contaminants normally circulating in the air, the decision was made to move you to the medical restriction company which has windows in the cells and more closed cell fronts. This should help alleviate your exposure to those irritants which normally exist in a multiple residency setting. You have agreed with this solution." Frisby declaration [113-10], Ex. C.

On March 25, 2002, plaintiff was transferred to the Auburn Correctional Facility. Amended complaint [18], ¶4. In response to plaintiff's complaints about ETS at Auburn, Bradt allegedly stated: "In regards to smoking, there is not smoking permitted indoors on the facility grounds. Staff and inmates are expected to comply with these rules." Amended complaint [18], ¶4(h). Ann Driscoll, Senior Nurse at Auburn, also advised him that although inmates were allowed to smoke in the yard, there was no smoking indoors, and that Auburn was not equipped with cells with solid doors. Driscoll declaration [113-9], ¶6. When plaintiff was seen by Nurse Driscoll on June 12, 2002, she noted that he was not in respiratory distress, had no physical ailments and that his condition was stable. Driscoll declaration [113-9], ¶9. Plaintiff was then

seen by a pulmonologist on July 22, 2002, and continued to receive treatment through January 13, 2003. Ashan declaration [113-3], ¶10.

On February 6, 2003, plaintiff was transferred to the Elmira Correctional Facility. Amended complaint [18], ¶7. Shortly following his arrival, plaintiff complained of exposure to ETS and requested a transfer to another cell bock. Id., ¶7(a), (c), (d), (f); Dwyer declaration [131], Ex. P. On March 3, 2003, Welsey Canfield, M.D., indicated that plaintiff be placed in G-Block with a window because of his respiratory condition. Canfield declaration [113-8], ¶6. However, he would not recommend such a transfer until plaintiff was removed from keep lock. Id., ¶¶8-9.

On March 18, 2003, defendant William Hopkins denied plaintiff's request to transfer out of keeplock status. Amended complaint [18], ¶7(h); Dwyer declaration [131], Ex. X. On March 27, 2003, plaintiff filed a grievance seeking a transfer to the "smoke free" G- Block. This grievance was denied by defendant Calvin West, Elmira's Acting Superintendent, on April 15, 2003: "Smoking in the housing units, is not allowed. Any incident of smoking in a housing unit, should be reported to the area supervisor, immediately. . . . Regarding medical concerns, grievant is advised to address these concerns at sick call." Dwyer declaration [131], Exs. T and Z. Upon his release from keeplock on May 16, 2003, plaintiff was placed in G-Block. Canfield declaration [113-8], ¶12. On June 11, 2003, the Inmate Grievance Program Central Office Review Committee ("CORC") unanimously accepted plaintiff's grievance, in part, finding: "Grievant has been moved to G-Block for medical reasons. The grievant's request for accommodations has been addressed by the facility administration. CORC also notes that the grievant has been scheduled for a specialist consultation in the future. CORC advises the

grievant to address his medical concerns through sick call. Additionally, CORC asserts that neither staff nor inmates smoke indoors. CORC advises the grievant to report such smoking violations to the unit officer or area supervisor at that time for appropriate action." Dwyer declaration [131], Ex. AA.

At the close of discovery defendants moved for summary judgment seeking to dismiss the amended complaint in its entirety.

## ANALYSIS

**A.  Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

**B.	Plaintiff's Abandoned Claims**

In response to defendants' motion for summary judgment, plaintiff only addresses his Eighth Amendment deliberate indifference claim against defendants Bradt, Conway, William Hopkins and West arising from his exposure to ETS. At oral argument, plaintiff's counsel conceded that plaintiff abandons all other claims contained in his amended complaint.

**C.	Plaintiff's Eighth Amendment Claim**

Plaintiff alleges that his Eight Amendment rights "were violated because he was exposed to excessive levels of second-hand smoke notwithstanding the knowledge on the part of defendants Bradt, Conway, W. Hopkins and West that he suffers from a health condition that renders him particularly susceptible to the effects of such exposure." Plaintiff's memorandum of law [129], p. 1.

"The right to be free from deliberate indifference to serious medical injury caused by excessive exposure to ETS is clearly established." Colon v. Drew, 335 Fed. Appx. 86, 88, (2d Cir. 2009) (summary order). "To prevail on his Eighth Amendment claim alleging serious medical problems caused by exposure to ETS, . . . [plaintiff] must prove both the subjective and objective elements necessary to prove an Eighth Amendment violation". Id. at 87; Helling v. McKinney, 509 U.S. 25, 32 (1993).

To satisfy the *objective* component, "a plaintiff must show that he has suffered serious problems as a result of exposure to unreasonably high levels of ETS." Id. This may be a present harm or an unreasonable risk of serious damage to the inmate's future health. *See* Helling, supra, 509 U.S. at 35.

Under the *subjective* component, defendants must "know[] of and disregard[] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In evaluating whether plaintiff has met this burden, "the court must consider the prison authorities' current attitudes and conduct, including whether they have adopted, and to what extent that have enforced, a smoking policy." Simmons v. Nalley, 2009 WL 3199552, *10 (N.D.N.Y. 2009).

At the outset, it is not disputed by plaintiff that he received treatment for his respiratory condition and that defendants eventually granted him accommodations to limit his exposure to ETS while he was housed at Attica and Elmira. Thus, plaintiff's counsel conceded at oral argument that plaintiff's claim is limited to the periods in which he was not afforded these accommodations. *See, e.g.,* Scott v. Hollins, 2006 WL 1994757, *6 (W.D.N.Y. 2006) (Curtin, J.) ("While Drs. Grabo and Augustin responded to and treated plaintiff's respiratory and sinus symptoms, they failed to address plaintiff's concern regarding ETS exposure. The denial of plaintiff's request for a window cubicle appears to be a policy choice based on the inability to provide a window cubicle to every inmate who requested one. Accordingly, plaintiff has raised an issue of fact that Drs. Grabo and Augustin were aware of a substantial risk to plaintiff's health by ETS exposure and that they disregarded that risk.").

With respect to the objective component of plaintiff's claim, defendants argue that "since 2000 the plaintiff has suffered nothing more then [*sic*] mild asthma and not sought treatment for exposure to ETS". Defendants' memorandum of law [115], p. 6. Plaintiff's medical records belie this assertion. They indicate that he has "a *serious* respiratory condition" Frisby declaration [113-10], Ex. B (emphasis added), which includes "*severe* asthma, COPD". Dwyer declaration [131], Ex. A (emphasis added). Plaintiff also sought treatment for his

exposure to ETS.  *See* Frisby declaration [113-10], Ex. D, September 13, 2001 and October 15, 2001 records.  In fact, he testified that he was so overwhelmed by smoke on several occasions that he was taken to emergency sick call. Dwyer declaration [131], Ex. G, p. 51.[2]  Even if plaintiff's medical records did not establish a present harm from his exposure to ETS, the harm can be from the future effects caused by his exposure to ETS.  *See* Jackson v. Goord, 664 F. Supp. 2d 307, 322 -323 (S.D.N.Y. 2009) (rejecting the defendants' argument "that plaintiff's medical records do not support a claim of present harm based on exposure to cigarette smoke", because "the Eighth Amendment protects against imminent dangers as well as actual injury").

        Defendants also rely on the absence of any expert testimony by plaintiff establishing a causal connection between his alleged exposure to ETS and aggravation of his respiratory condition.  Defendants' memorandum of law [115], p. 6.  To establish causation, plaintiff relies on medical literature, which indicates that "ETS can cause an acute decrease in pulmonary function in adults with asthma." Dwyer declaration [131], Ex. B.  Although this evidence is sufficient to establish general causation (*i.e.*, ETS can be cause serious health problems), it is insufficient to establish specific causation (*i.e.*, ETS caused plaintiff's caused serious health problems).  *See* Hauman v. Beard, 2008 WL 818490, *4 (W.D.Pa. 2008) ("Other than a few general news articles, which indicate that smoke, as well as many other things, may

---

     [2]    *Compare with* LaCroix v. Williams 2000 WL 1375737, *3 (W.D.N.Y. 2000) (Elfvin, J.) ("Inasmuch as plaintiff's medical examinations revealed nothing more than cold-type symptoms, his allegation that prison officials acted with deliberate indifference must fail because the record indicates that their actions were premised on objective medical evidence which disqualified him from being assigned to a non-smoking cell. Consequently and because plaintiff has failed to show that prison officials were deliberately indifferent, his Eighth Amendment claim fails."); Blyden v. Bartlett, 1997 WL 584308, *2 (W.D.N.Y. 1997) (Elfvin, J.) ("The plaintiff here alleges only that he suffered headaches, irritability and nausea. He has provided no medical records to substantiate either his allergic condition or the aggravation thereof from exposure to the smoke. This Court finds that the plaintiff's alleged injuries are not sufficiently severe to implicate a violation of his constitutional rights.").

aggravate an asthmatic condition, there is no evidence in the record that there is a causal relationship between the smoke and the distress Mr. Oliver suffered.").

Despite the absence of any direct expert testimony establishing causation, plaintiff's medical records are sufficient to raise a triable issue of fact as to whether there is a causal connection between the exacerbation of his condition and exposure to ETS. For example, shortly after DOCS smoking ban was implemented, Frisby recommended to Conway that "a review of [plaintiff's] medical file shows that he does have a serious respiratory condition and should be away from secondhand smoke. A cell with a solid door and a private window would most likely be best for him." Frisby declaration [113-10], Ex. B. *See also* March 8, 1999 progress note from St. Barnabas Hospital Correctional Health Services (Dwyer declaration [131], Ex. I) ("Please be advised that [plaintiff] needs to be housed in a housing area [with] minimal smoking and adequate air ventilation due to his medical condition.").[3]

Although exposure "to unreasonably high levels of ETS" is cognizable as a constitutional violation, Helling, supra, 509 U.S. at 35, "in assessing whether the nature and extent of ETS exposure presents a sufficiently serious circumstance I take account of this plaintiff's greater sensitivity to smoke because of his [respiratory condition]." Lyerly v. Koenigsmann, 2006 WL 1997709, *5 (S.D.N.Y. 2006). Therefore, while the ETS exposure experienced by plaintiff may not have an adverse impact on the average person, I must consider plaintiff's ailments in determining what constitutes an unacceptable level of exposure. As evidenced by the medical records discussed, it is evident that there is a triable issue of fact as to whether the levels of ETS exposure experienced by plaintiff were unreasonable.

---

[3] This medical record is not from the relevant period of plaintiff's DOCS incarceration.

With respect to the subjective component of plaintiff's claim, defendants do not argue that they lacked personal involvement, that they were unaware of plaintiff's respiratory condition, that they attempted to address plaintiff's concerns through any means other than DOCS smoking ban, or that they provided adequate treatment to plaintiff for his respiratory condition. Rather, they rely solely on DOCS ban on all indoor smoking within its correctional facilities. Defendants' memorandum of law [115], p. 6. Plaintiff alleges that by "fail[ing] to enforce [DOCS] policy prohibiting indoor smoking, Defendants displayed deliberate indifference to Plaintiff's future health." Plaintiff's memorandum of law [129], p. 1. In support of this argument, plaintiff relies primarily on the fact that between January 2001, the effective date of DOCS no smoking policy, through November 28, 2006, there were nearly 42,000 reported disciplinary charges for smoking throughout the DOCS system with 953 of these charges occurring at Attica, Elmira and Auburn. Dwyer declaration [131], Ex. F.

"When DOCS implemented its four phase policy leading up to a ban on indoor smoking, it stated that it would evaluate the effectiveness of the indoor smoking ban and if problems persist, might ban all smoking and smoking products. [Dwyer declaration [131], Ex. J] There is no evidence in the record, however, as to whether DOCS made any such evaluation or, if it did, the result. Thus, it is undisputed that senior DOCS officials recognized the need to prohibit smoking indoors to protect inmates from ETS, and recognized that there might be compliance problems." Denis v. N.Y.S. Department of Correctional Services, 2006 WL 217926, *19-20 (S.D.N.Y. 2006), report and recommendation adopted, 2006 WL 406313 (2006).

At oral argument, defendants argued that the number of disciplinary charges for smoking demonstrated that they were enforcing the smoking ban. However, the number of

disciplinary charges can equally be interpreted to demonstrate that there was a lack of compliance with the smoking ban.  Such an interpretation is also consistent with plaintiff's testimony that correctional officers would "a lot of times . . . turn a blind eye" to indoor smoking.  Dwyer declaration [131], Ex. G, p. 82.

Therefore, I find that plaintiff has raised a triable issue of fact as to whether defendants were adequately enforcing the indoor smoking ban.  "Evidence of the large number of disciplinary tickets issued [for smoking violations] separates this case from those in which other Circuits have granted summary judgment due, in part, to the inmate's failure to proffer sufficient evidence of a failure to enforce."  Denis, supra, 2006 WL 217926 at *20 n. 23; Warren v. Keane, 937 F. Supp. 301, 305 (S.D.N.Y. 1996), aff'd, 196 F.3d 330 (2d Cir. 1999) (denying summary judgment on plaintiff's ETS claims where "plaintiffs' allegations, if believed, overwhelmingly describe a prison environment permeated with smoke resulting from, *inter alia*, under-enforcement of inadequate smoking rules, overcrowding of inmates and poor ventilation").[4]

Even accepting defendants' argument that the number of disciplinary charges establishes a sufficient level of overall enforcement of the smoking ban, plaintiff's grievances indicate that some of the individual defendants did not adequately enforce the smoking ban.  *See* Dwyer declaration [131], Ex. V.  Moreover, the variation between the number of disciplinary charges issued at each facility demonstrates a lack enforcement at certain facilities, including

---

[4] *Compare with* Simmons, supra, 2009 WL 3199552 at *5 ("Plaintiff has failed to introduce any evidence, beyond his own allegations in the Complaint, regarding the levels of ETS that he was allegedly exposed to. . . . Thus, Plaintiff's Eighth Amendment claim should be dismissed on that ground as well.").

those at which plaintiff was incarcerated. For example, Attica reported only 86 disciplinary charges for smoking from 2001 through 2006 whereas Auburn reported 534 charges, and other facilities like Gowanda reported 3,910 charges over the same period. Dwyer declaration [131], Ex. F. Therefore, I find that plaintiff has raised a triable issue of fact as to whether defendants were deliberately indifferent to his respiratory condition.

## CONCLUSION

For these reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part as set forth herein. The parties shall appear before Hon. Jeremiah J. McCarthy on April 21, 2010 at 11:00 a.m. to set a trial date.

**SO ORDERED**.

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

Dated: March 30, 2010